UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

JOSE RAMOS-ROMERO,

    Petitioner,

v.

GREGORY A. KIZZIAH, Warden,

    Respondent.

Civil Action No. 6: 19-302-KKC

**MEMORANDUM OPINION AND ORDER**

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Federal inmate Jose Ramos-Romero previously filed a *pro se* habeas corpus petition in this Court challenging both his federal convictions and the resulting sentence on six enumerated grounds. *Ramos-Romero v. Kizziah*, No. 6: 19-CV-259-KKC (E.D. Ky. 2019) [R. 1 therein]. The exact nature of his various arguments in support of his first five claims was far from clear, but the Court recently concluded that his claims were not properly asserted under 28 U.S.C. § 2241 and denied the petition. [R. 5 therein at 1-4].

Ramos-Romero's sixth and final claim ambiguously sought what he termed a "nunc pro tunc" designation from the Bureau of Prisons so that he could get credit against his federal sentence for a separate state sentence arising out of the same conduct. [R. 1 therein at 1, 12-13] The Court construed this last claim as seeking relief under 18 U.S.C. § 3585(b) and/or a *nunc pro tunc* designation pursuant to *Barden v. Keohane*, 921 F. 2d 476 (3d Cir. 1990) and BOP Program Statement 5160.05. Such a claim would be unrelated to the others because it relates to the execution of his sentence rather than to its validity, and hence the Court denied it without prejudice so that Ramos-Romero could assert it in a separate petition. [R. 5 therein at 5] Ramos-Romero sought reconsideration of the denial of his petition, which

1

the Court rejected. [R. 8, 11 therein] Ramos-Romero then sought leave to assert his "nunc pro tunc" claim in a separate habeas corpus petition, and tendered a petition raising that claim. [R. 13, 13-1 therein] The Court granted that motion and ordered that the tendered petition be filed in a new case. [R. 14 therein] The tendered petition has been docketed as a new petition in this proceeding. [R. 2]

Ramos-Romero has not yet paid the five dollar filing fee for his petition in this case or filed a motion to proceed *in forma pauperis*. However, upon a more thorough review of this claim, as described in both the original petition [R. 1 therein at 12-13] and in the newly-tendered petition [R. 2], the Court concludes that it too is a challenge to the sentence imposed by the trial court, not a challenge to the BOP's execution of the judgment. Accordingly, this claim was properly asserted in the original petition and should have remained a part thereof. But rather than restore this claim to the original case, for administrative convenience the Court will waive the filing fee in this matter and proceed to screen the petition pursuant to 28 U.S.C. § 2243. *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). In addition, because the Court concludes that this claim must be denied, the Court will fully waive payment of a separate appellate filing fee should Ramos-Romero choose to file an appeal in this case.

In the original petition Ramos-Romero alleges that during the sentencing hearing in 2005, the probation office, the government and the trial court all agreed that the offense conduct giving rise to the federal conspiracy conviction was an armed robbery that had been separately prosecuted in Puerto Rico and yielded a conviction and 8-year state sentence. [R. 1-1 therein at 7; R. 2 herein at 6, 9] This is true. However, the state conviction was raised and discussed only to determine whether Ramos-Romero was subject to a 7-year mandatory minimum sentence for brandishing the firearm during the commission of the federal offense, a fact the prosecution argued was established by the state conviction for armed robbery. The

trial court disagreed, and the state conviction was not raised again during the sentencing hearing for any purpose. [R. 1-1 therein at 7; R. 2-1 herein at 2] Nonetheless Ramos-Romero argues in his petition that, notwithstanding the fact that he never sought sentencing credit during the hearing, the trial court's statement at the conclusion of the sentencing hearing that "[y]ou will be given credit toward your sentence in any days in connection with the offenses for which sentence is imposed" [R. 1-1 therein at 12; R. 2-1 herein at 2], refers not to the federal sentence imposed moments before ("for which sentence *is* imposed"), but instead to the separate state sentence imposed years before. While Ramos-Romero characterizes his claim as one that "the (BOP) should '*nunc pro tunc*' the Puerto Rico state prison as the federal [designation]," he makes that request for relief upon the premise that "Romero's (PSI) and Judgment of Commitment are both also inaccurate based on the federal judge's sentence ruling and order." [R. 1 therein at 13]

Ramos-Romero's misunderstanding of the nature of his request for relief as seeking a *nunc pro tunc* designation appears to have been prompted by the BOP's misleading (although doubtless unintentionally) responses to his inmate grievances. *See* [R. 2-1 at 4, 6] To clarify: the relief available under *Barden* – a *nunc pro tunc* designation – is only available where a federal sentence is imposed *first*, then a state court *later* imposes a sentence and orders it to run concurrently with the pre-existing federal sentence. *Barden*, at 921 F. 2d at 480. Neither of those factual circumstances – order of sentencing and direction of concurrency – is present here. Had they been, 18 U.S.C. § 3585(a) and the Supremacy Clause would have rendered the state court's order of concurrency meaningless. The Third Circuit held in *Barden* that under such circumstances the BOP may use its authority under 18 U.S.C. § 3621(b) to retroactively designate the state prison as the place of service for the federal sentence, thus giving practical effect to the state court's criminal judgment. *Simms v. United States*, No.

08-cv-43-HRW, 2009 WL 3061994, at *4-5 (E.D. Ky. 2008).  But *Barden* and the *nunc pro tunc* remedy it enables are simply not relevant in this case because Ramos-Romero's state sentence was imposed before, not after, his federal sentence.  Cf. *Dunlap v. Ives*, No. 11-271-GFVT, 2012 WL 1711379, at *2 (E.D. Ky. May 15, 2012).  In addition, the federal judgment was silent with respect to concurrency *vis-a-vis* the prior Puerto Rico sentence, and by operation of law the federal sentence therefore ran consecutively to his state sentence.  18 U.S.C. § 3584(a).

The foregoing explains why, as a matter of substance, Ramos-Romero cannot obtain a *nunc pro tunc* designation.  But that was never really the nature of his claim, either in his inmate grievances to the BOP or in his habeas petition to this Court.  Instead, Ramos-Romero points to the trial judge's statements at the conclusion of the sentencing hearing that he should receive "credit toward your sentence in any days in connection with the offenses for which sentence is imposed," [R. 1-1 therein at 12; R. 2-1 herein at 2] as reflecting the trial judge's intention that his sentence be reduced by the entire term of his Puerto Rico sentence.  That this is Ramos-Romero's claim is made plain through his assertion that the written "Judgment of Commitment [is] inaccurate based on the federal judge's sentence ruling and order."  [R. 1 therein at 13]  His real argument is not that the BOP has erred in calculating his prior custody credits under § 3585(b), but that the trial judge at sentencing actually awarded him a reduced sentence (although he refers to them as "credits"), as permitted by U.S.S.G. § 5G1.3, to account for time he spent in service of his Puerto Rico conviction.

That argument, however, is without merit.  The Judgment and Commitment Order does not reflect a downward departure under § 5G1.3 because it does not express any such reduction in the term of imprisonment.  Cf. *United States v. Dorsey*, 166 F. 3d 558, 560 (3d Cir. 1999) (noting that to apply a § 5G1.3 reduction, "if [a district court] decides that a 13-month federal sentence is appropriate, it should shorten that sentence to seven months and,

4

in this way, give credit on the federal sentence for the six months already served on the state sentence."). Of course, the sentence pronounced at the sentencing hearing controls over conflicting terms in the written judgment. *United States v. Penson*, 526 F. 3d 331, 334 (6th Cir. 2008); *Ruggiano v. Reish*, 307 F. 3d 121, 132-34 (3d Cir. 2002). But nothing in the sentencing transcript here even shows that the defense requested or the trial court entertained a reduction in sentence under § 5G1.3. And the trial judge's single-sentence statement that Ramos-Romero would receive prior custody credit plainly refers to the federal sentence just imposed. Of course, only the BOP – not the sentencing judge – has the authority to determine and award such "credits," as opposed to a sentence reduction. *United States v. Wilson*, 503 U.S. 329, 335 (1992). Thus, the transcript of the hearing indicates that the written judgment fully and accurately reflects the sentence orally pronounced during the hearing. See *United States v. Gaskins*, 393 F. App'x 910, 914 (3d Cir. 2010); *Flores v. Kizziah*, No. 7:17-126-KKC, 2018 WL 3732664, at *2-4 (E.D. Ky. Aug. 6, 2018). Because the written judgment did not reduce Ramos-Romero's federal sentence to account for the time he spent in service of his Puerto Rico conviction for armed robbery, no "credit" is warranted under U.S.S.G. § 5G1.3, and Ramos-Romero's petition must be denied.

Accordingly, the Court **ORDERS** as follows:

1. The Court **WAIVES** payment of the habeas filing fee.
2. The Court **DENIES** Ramos-Romero's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [R. 2].
3. The Court will **ENTER** an appropriate judgment
4. This action is **STRICKEN** from the docket.

Dated December 23, 2019

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY